**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAYDEN RICHARDSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:21-cv-00522 |
| | § | |
| NORTHWESTERN UNIVERSITY, | § | Honorable Edmond E. Chang |
| AMANDA DASILVA, HEATHER VAN | § | |
| HOEGARDEN OBERING, MICHAEL | § | |
| POLISKY, AND PAMELA BONNEVIER, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## DEFENDANT MICHAEL POLISKY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTION

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2, Defendant Michael Polisky ("Polisky") hereby moves for an order compelling Plaintiff Hayden Richardson ("Plaintiff") to (1) produce hard-copy documents responsive to Polisky's outstanding Requests for Production ("Requests"), specifically Request Nos. 4–5, 8, 13–15, 17–18, 22, 25, 29–32, 35–41, 43–47, and 49, by July 1, 2024[1]; (2) produce electronically-stored information ("ESI") responsive to Polisky's outstanding Requests, specifically Request Nos. 2, 3, 7, 23, 24, 26–28, 33, 34, 42, 48, and 50, in native form with all applicable attachments and families following a comprehensive collection of all relevant sources, application of agreed-upon search terms, and a review for responsiveness conducted by *counsel* (rather than Plaintiff herself), no later than July 1, 2024;

---

[1] Plaintiff's counsel has indicated that their client is available for a deposition in mid- to late-July. After determining dates counsel for all Defendants are available, Defendant Northwestern University sent an email to Plaintiff's counsel on June 7, 2024, proposing Plaintiff's deposition take place between July 22 and 25, 2024. Counsel for Northwestern University has informed Polisky that, during a call with Plaintiff's counsel on June 14, 2024, Plaintiff agreed to respond to the email after confirming counsel's availability. As of the filing of this Motion, Plaintiff has not responded to the June 7 email. Polisky believes that it is both reasonable and necessary to have documents responsive to his Requests at least three weeks prior to Plaintiff's deposition—that is why Polisky proposes July 1, 2024 as the production deadline.

(3) provide a written description of the methods used to collect and produce PLTF000509–001550, including a description of the way in which documents were collected and search terms were applied (if at all) within five days of the Court's order; (4) serve amended responses to Polisky's Requests confirming that all responsive documents have been produced or, alternatively, that there are no documents responsive to a particular Request by July 1, 2024; and (5) re-produce PLTF001587–001682, which contains corrupted text, in a legible form by July 1, 2024.

## INTRODUCTION

Over seven months ago, on October 31, 2023, Polisky served a comprehensive set of Requests on Plaintiff. *See* Ex. A (Polisky's Requests). After multiple extension requests, which Polisky agreed to, Plaintiff served her initial written responses and objections to Polisky's Requests—but no responsive documents—on February 9, 2024 (the day *after* the Parties' agreed-upon deadline). *See* Ex. B (Plaintiff's Responses to Polisky's Requests); Ex. C (February 8–16, 2024 Email Correspondence), at 4. Thereafter, Polisky sent a series of follow-up emails inquiring about the status of Plaintiff's initial document production, Ex. C, at 1–4; when that production finally came on February 19, 2024, it only consisted of 97 pages (PLTF000001–000097). Since that date, Plaintiff has produced five sets of documents: a cherry-picked initial ESI production on May 21, 2024 (PLTF000509–001550) and four small compilations of hard-copy documents (PLTF000098–000376 on April 12, 2024; PLTF000377–000508 on April 23, 2024; PLTF001551–001586 on May 22, 2024; and PLTF001587–001880 on June 5, 2024[2]).

Polisky was particularly concerned by the May 21, 2024 production. The emails Plaintiff provided in that production were produced in the form of screenshotted, cropped images rather

---

[2] Contrary to the name given to the PDF Plaintiff produced on June 5, 2024, "PLTF001587–001703", the production (which is out of order) included documents up to Bates No. PLTF00001880. The majority of the production (PLTF001587–001682) contains corrupted text that renders those pages illegible.

than native files.[3]  Because of the imprecise manner of production, portions of emails (particularly at the top or bottom of a particular screenshot) are cut off.  In some cases, Plaintiff appears to have intentionally screenshotted only a single email in what is clearly a larger chain of emails.  Some of the images Plaintiff produced also include a view of her computer browser; the inclusion of the frame of an email application or even a hovering mouse cursor in these images leaves little doubt that Plaintiff's ESI production was not collected, reviewed, or produced properly.  In addition, several of the emails at issue indicate that they included attachments Plaintiff has not produced.  Plaintiff's counsel has not provided a privilege log indicating whether full email chains were withheld because of privilege concerns, leaving Polisky to assume that Plaintiff intentionally chose to only produce certain portions of responsive ESI that she (rather than her lawyers) determined were responsive.

Over the course of the past three months, the Parties have conferred numerous times over email and phone calls to discuss the outstanding deficiencies in Plaintiff's production, in accordance with Local Rule 37.2, to no avail.  As an initial matter, it has been extremely difficult to get in contact with Plaintiff's counsel.  Emails from Polisky's counsel went unanswered on several occasions and meetings were repeatedly cancelled at the eleventh hour.  On the occasions when the Parties were actually able to meet, the conversations were seemingly productive and Plaintiff agreed to produce the requested material, but Plaintiff repeatedly failed to produce documents as promised and to date has produced next-to-nothing responsive to Polisky's Requests.  As a result of Plaintiff's habitual failure to respond to emails, last minute cancellations, and meager document productions, Polisky's ability to move fact discovery

---

[3] Polisky understands that, during a recent discussion with Defendant Northwestern University, counsel confirmed that these screenshots were created by Plaintiff herself.

forward and prepare his defense has been significantly hamstringed, leaving him with no choice but to seek Court intervention. Polisky requests that the Court order Plaintiff to comply with her discovery obligations and promptly provide the above-listed material so that the Parties can move the case forward.

## BACKGROUND

### A.     Polisky's March 7, 2024 Deficiency Letter

On March 7, 2024—a few weeks after receiving Plaintiff's initial February 9, 2024 production—Polisky sent a detailed letter to Plaintiff outlining each of the deficiencies in Plaintiff's Responses to Polisky's Requests. *See* Ex. D (Polisky's March 7, 2024 Deficiency Letter). The letter requested that Plaintiff produce documents responsive to each of Polisky's Requests because, in response to 50 of Polisky's 57 Requests, Plaintiff had stated that she "shall serve responsive, non-privileged documents under separate cover." *Id.* at 3. However, as of March 7, Polisky had only received Plaintiff's initial 97-page production—the entirety of which was either duplicative of documents produced by Defendant Northwestern University or consisted of publicly-available material. The letter also highlighted Plaintiff's failure to state (1) whether responsive documents were being withheld by counsel based on inappropriate privilege objections (which included a claimed "critical self-evaluative privilege" as well as "confidential business or proprietary information or trade secrets"), (2) if there were no documents responsive to a particular Request, and (3) whether all documents responsive to Request Nos. 2–5, 7–8, 13–15, 17–18, 22–42, and 43–50 had been produced (once she had completed her investigation with respect to each Request). *Id.* at 1–6.

In the March 7 letter and accompanying cover email, Polisky asked Plaintiff to provide her availability for a meet and confer the following week. *Id.* at 6; Ex. E (February 8, 2024– June 7, 2024 Email Correspondence), at 21–22. The Parties eventually had that meeting on April

2, 2024—but only after great and repeated efforts to schedule with Plaintiff's counsel. *See* Ex. E, at 11–22. Polisky had to follow-up on several unanswered emails and re-schedule three meet and confers that were canceled by Plaintiff on the day the meetings were scheduled to take place.[4] When the Parties were finally able to have a video conference meeting on April 2, 2024, Plaintiff agreed to supplement each of the deficient responses outlined in Polisky's March 7 letter. She also clarified that the written objections laid out in response to some of Polisky's Requests were not the cause of the delay—in fact, she agreed to produce documents responsive to each of the forty outstanding Requests described in Polisky's March 7 letter no later than April 8, 2024 (a date that came and went).

### B. Polisky's May 3, 2024 Deficiency Letter

In the weeks following the Parties' initial meet and confer, Plaintiff provided two supplemental productions: one on April 12, 2024 (PLTF000098–000376) and a second on April 23, 2024 (PLTF000377–000508). A cover letter accompanying the April 12 production explained that those supplemental documents were only responsive to three of Polisky's Requests (Request Nos. 43–45). When Plaintiff's counsel failed to respond to emails asking when Polisky and his co-defendants could expect additional productions, *see* Ex. E, at 8–10, Polisky prepared a second letter outlining outstanding deficiencies.

---

[4] Plaintiff failed to respond to the times initially proposed for a meet and confer in the cover email accompanying Polisky's March 7 letter. Ex. E, at 21–21. Polisky followed up on March 12, 2024, to propose additional times for a meeting. *Id.* at 20–21. Plaintiff then agreed to meet on March 13—but, in a move that would quickly become a pattern, Plaintiff asked to reschedule less than an hour prior to the agreed-upon meeting. *Id.* at 19–20. The Parties rescheduled for March 18, 2024. *Id.* at 17–18. Again, approximately one hour prior to the meeting, Plaintiff asked to reschedule. *Id.* at 16. Polisky proposed a meet and confer on either March 20 or March 21; Plaintiff again did not respond so, on March 22, Polisky followed up to propose additional times. *Id.* at 14–15. The Parties agreed to meet on March 29. *Id.* at 14. But that day, Plaintiff asked to reschedule yet again. *Id.* Polisky asked if Plaintiff's counsel was available on April 1, but Plaintiff did not respond until that date. *Id.* at 12–13. Her counsel asked for Polisky's availability on April 2, and the Parties were finally able to meet on that date. *Id.* at 11–12.

In a letter sent to Plaintiff on May 3, 2024, Polisky highlighted that Plaintiff had still failed to produce documents responsive to the vast majority of his Requests.[5] *See* Ex. F (Polisky's May 3, 2024 Deficiency Letter). Within both the May 3 letter and the accompanying cover email, Polisky asked to meet and confer on either May 7 or May 9.[6] *See* Ex. E, at 8–9; Ex. F, at 3. When Plaintiff responded a few days later she agreed to a meet and confer on May 9—but, consistent with Polisky's prior experience, Plaintiff canceled the morning of the scheduled meeting. Ex. E at 6–8.

The Parties ultimately met on May 13, 2024, to discuss the outstanding deficiencies in Plaintiff's production. Once again, Plaintiff's counsel agreed to remedy each of the outstanding deficiencies Polisky had highlighted in a timely manner. As memorialized in a May 17, 2024 email from Plaintiff to Polisky, Plaintiff committed to producing her first ESI production no later than May 20, 2024. *Id.* at 4. During the May 13 meeting, Plaintiff's counsel also assured Polisky that she was also working to collect responsive hard-copy documents, which she expected to produce on the same time table.

### C.     Polisky's May 2024 Emails to Plaintiff

On May 20, Plaintiff's counsel informed Polisky that the production she had promised for that day was delayed. *Id.* at 3–4. In response to that email, Polisky's counsel sent a clear message asking when they could "expect to receive the other items laid out in [the] March 7 and May 3 deficiency letters (and discussed during [the] call [on May 13])", particularly (1) "written

---

[5] Though Plaintiff has indicated that the documents produced on April 12 are responsive to Request Nos. 43–45, Plaintiff has not amended her Responses to confirm that she has completed her investigation with respect to those particular Requests (as requested in Polisky's March 7 and May 3 letters). Therefore, Polisky includes Request Nos. 43–45 among those at issue in this Motion.

[6] When the Parties appeared before the Court for a video status hearing on May 7, 2024, Defendants reported that they were conferring with Plaintiff on deficiencies in her discovery responses and productions. *See* ECF No. 168. "Counsel for the Plaintiff reported that due to ESI-platform issues, some of the Plaintiff's document production has been delayed but should be resolved soon." *Id.*

confirmation that Plaintiff is not withholding any responsive information or documents based on her objections and claims of privilege", (2) hard copy documents responsive to Polisky's Requests, and (3) "[a]mended responses to Polisky's Requests confirming all responsive documents have been produced or, alternatively, that there are no documents responsive to a particular request." *Id.* at 3. Plaintiff's counsel never responded to that email.

Plaintiff produced her first ESI production (PLTF000509–001550) on May 21, 2024, and a thirty-five page production of hard-copy documents on May 22, 2024 (PLTF001551–001586). Rather than curing the outstanding deficiencies, this long-awaited production introduced an entirely new set of issues. It was immediately evident that a significant portion of Plaintiff's May 21 ESI production consisted of screenshots rather than native files. Rather than running the agreed-upon search terms laid out in the Parties' ESI Protocol[7] across relevant sources, Plaintiff selectively screenshotted single emails within long chains and produced other emails without the attachments referenced therein.

Polisky emailed Plaintiff on May 24, 2024, to highlight these issues and ask when they would be corrected. Ex. E, at 1–2. The May 24 email also asked Plaintiff to "describe the process [she] used for the collection of [her] ESI." *Id.* And, following up on the unanswered email sent earlier that same week, the May 24 email from Polisky asked when he could expect the long-awaited outstanding items, including: (1) Plaintiff's next rolling ESI production; (2) the

---

[7] On or about March 11, 2024, Plaintiff agreed to run a series of search terms across her email, social media and blogs (including private messaging features therein), text messages, Messaging Apps, personal computers or tablets, and hard copy files or documents. Plaintiff's counsel indicated during the May 13, 2024 meet and confer that Defendants' search terms had produced over 100,000 hits, yet only 1,041 pages of ESI material has been produced to date (PLTF000509–001550, produced on May 21, 2024). Based on the screenshotted format of the production and Plaintiff's representations during a recent discussion with Defendant Northwestern University, it appears that the ESI included in the May 21 production was not identified based on a comprehensive collection, application of search terms, and counsel-led review for responsiveness. Instead, Plaintiff herself selected and screenshotted materials she *personally* determined were relevant to her case. There is no indication that the documents in Plaintiff's other small productions were identified based on the application of the agreed-upon search terms to relevant sources.

date on which Plaintiff anticipates all of Plaintiff's ESI will be produced; (3) hard copy documents that are responsive to Polisky's Requests, particularly Request Nos. 4–5, 8, 13–15, 17–18, 22, 25, 29–32, 35–41, 43–47, and 49; (4) written confirmation that Plaintiff is not withholding any documents based on her objections and claims of privilege; and (5) amended responses to Polisky's Requests confirming that all responsive documents have been produced or, alternatively, that there are no documents responsive to a particular Request. *Id.* Given the continued delays and upcoming scheduling deadlines, Polisky noted that if Plaintiff did not produce a substantial portion of Plaintiff's production by May 31—seven months after Polisky served his discovery requests—Polisky would have no choice but to file a motion to compel. *Id.* As of the filing of this Motion, Plaintiff's counsel has not responded to the May 24 email.

### D.  Polisky's June 2024 Outreach to Plaintiff

Apart from a small production on June 5, 2024 (PLTF001587–001880), which is largely illegible because of corrupted text, Plaintiff has made no further efforts to cure these longstanding deficiencies.  Polisky sent yet another email to Plaintiff's counsel on June 7, 2024, highlighting her failure to respond to his previous correspondence.  Ex. E, at 1.  The email, which went unanswered, proposed various times for a meet and confer the week of June 10.  *Id.*

In a final effort to resolve the significant deficiencies in Plaintiff's productions, Polisky called Plaintiff's counsel on June 17, 2024, and left a message with Plaintiff's counsel's assistant. Plaintiff's counsel followed up with an email to Polisky the same day and indicated that the outstanding issues described in this Motion would be addressed by June 19, 2024.  Ex. G (June 17–18, 2024 Email Correspondence), at 4.  To ensure there was no confusion, Polisky provided an outline of all remaining deficiencies described in his previous correspondence and stated that he would be "prepared to file a motion to compel if all of these issues are not remedied by 5:00

p.m. ET on Wednesday, June 19", as Plaintiff's counsel had promised. *Id.* at 1–2. Early the next morning, Plaintiff's counsel informed Polisky that a leave of absence she had planned for late June was starting early. *Id.* at 1. As of the filing of this Motion, the other member of Plaintiff's legal team who was copied has not responded to Polisky's June 17, 2024 email. *Id.*

Polisky appreciates that Ms. Vinci (the attorney whose leave of absence began earlier this week) has been leading the matter for Plaintiff throughout the discovery period, and that there will naturally be a catch-up period for the other members of her legal team. But Plaintiff has five other attorneys of record—all of whom have been copied on Polisky's copious emails attempting to move discovery forward. Each of those attorneys shares responsibility for remedying the deficiencies outlined in this Motion but, in light of Ms. Vinci's leave, it appears less likely than ever that Polisky can expect a quick resolution. Polisky served his Requests nearly eight months ago, and he simply cannot wait any longer to receive the productions and amended responses Plaintiff has repeatedly promised.

### E.     Outstanding Deficiencies in Plaintiff's Production

The Requests at issue in this Motion go to the heart of the claims in Plaintiff's Complaint. In fact, in each of the meet and confers described above, Plaintiff both conceded that the Requests at issue seek relevant documents and agreed to produce the same. In sum, the Requests at issue in this Motion relate to the following:

- Request Nos. 2–3, 7, 23–24, 26–28, 32–34, 42, 48, and 50 seek responsive ESI related to Plaintiff's experience on the Spirit Squad, including ESI referring or relating to (1) Plaintiff's alleged trafficking (including reports Plaintiff made regarding the same); (2) any alleged sexual harassment, sexual abuse, or sexual misconduct perpetrated against a member of the Spirit Squad; and (3) Plaintiff's communications with members of the Athletic Department—including Polisky—and other representatives of Northwestern University regarding the same.

- Request Nos. 4, 14, and 15 request documents related to Plaintiff's financial need during her four years of college, documents related to Plaintiff's payment of her

college tuition and related expenses, and documents related to expenses Plaintiff incurred as a member of the Spirit Squad.

- Request No. 5 seeks documents reflecting the date and location of events Plaintiff attended as a member of the Spirit Squad, including "any inappropriate touching, sexual exploitation, or verbal harassment at those events."

- Request No. 8 seeks documents reflecting Plaintiff's repeated public statements about the allegations underlying the Complaint, including the various written articles and op-eds she has prepared and interviews she has participated in.

- Request Nos. 13, 30, 31, 36–41, 46, 47, and 49 seek documents supporting specific allegations in Plaintiff's Complaint, including the claim that Polisky accused her of "fabricating" testimonials provided to the Athletic Department and Plaintiff's claim that Polisky did not permit her to meet with the Athletic Director. These Requests also seek evidence supporting each element of Plaintiff's claims against Polisky.

- Request Nos. 17 and 18 seek documents related to Plaintiff's LSAT examinations and her efforts to study for the same.

- Request No. 22 relates to the Spirit Squad contracts (which Plaintiff claims prevented her from quitting the team).

- Request Nos. 25 and 29 seek documents reflecting reports Plaintiff made concerning her alleged trafficking to Northwestern University employees and affiliates, including the testimonials Plaintiff collected for the Athletic Department in 2019.

- Request No. 35 requests materials related to the preparation of Plaintiff's Honors Thesis, "Cheerleading at Northwestern University: A Case Study of Institutional Failure." Among other documents, this Request seeks the contents of an external hard drive in Plaintiff's possession containing recorded interviews and transcripts of discussions with Spirit Squad members about the facts underlying the Complaint.

- Request Nos. 43–45 seek documents reflecting Plaintiff's alleged damages.

*See* Ex. A; *see also* Ex. D (further describing the relevance of each Request); Ex. F (same).

## ARGUMENT

Over the course of more than seven months, Plaintiff has produced next-to-no documents responsive to Polisky's Requests—despite repeated promises to do so. Each of the Requests at issue in this Motion are well within the proper scope of discovery. In fact, in each of the Parties' meet and confers, Plaintiff has agreed to produce documents responsive to the Requests at issue.

But, rather than making the necessary effort to move her case forward, Plaintiff has continued to string Polisky along with canceled meetings, repeated excuses, and meager holdover productions. Plaintiff's Complaint includes incredibly serious allegations against Polisky, and she cannot continue her efforts to stall the production of documents that are supportive of her claims (to the extent any exist).[8] The prior meet and confers between the Parties did nothing to resolve the outstanding disputes. Polisky has consistently accommodated Plaintiff but, given the impending discovery deadlines—particularly the deposition scheduling deadline—the Court's intervention is required to bring Plaintiff's continued efforts to stall discovery to an end.

### A.     Legal Standard

The Federal Rules of Civil Procedure permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of whether such material would be admissible in evidence. *See* Fed. R. Civ. P. 26(b)(1). Courts "should and ordinarily [do] interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.12 (1978). Therefore, discovery is permitted "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *3 (N.D. Ill. Apr. 17, 2019) (granting a motion to compel production of documents responsive to requests that were relevant and not burdensome); *see also In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *12 (N.D. Ill. June

---

[8] Plaintiff's allegations against Polisky have had very public ramifications—both personal and professional. Plaintiff and her counsel have found ample time to provide statements and editorials to the press that double down on her public accusations against Polisky. *See, e.g.*, Shannon Ryan, *Northwestern President Morton Shapiro Defends Hiring Mike Polisky as Athletic Director, Saying He Met the 'Highest Standard of Conduct and Character'*, CHICAGO TRIBUNE (May 6, 2021), https://tinyurl.com/mr9dhs3u; Megan Hickey, *Northwestern Cheerleader Alleging Sexual Harassment is Not Surprised by Hazing Scandal*, CBS NEWS CHICAGO (July 20, 2023), https://tinyurl.com/3xx9kkb4. But, now that the time has come to substantiate those claims, Polisky's efforts to move fact discovery forward have essentially been ignored.

26, 2023) (granting a motion to compel where a party "ha[d] not established an undue burden to producing . . . . combined with [ ] demonstration of the relevancy").

Given the liberal scope of discovery under the Federal Rules, the party objecting to a discovery request bears the burden of showing that the request is improper or should be disallowed. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). "Unstated or untimely grounds for objection ordinarily are waived." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 366 (N.D. Ill. 2005) (granting motion to compel when an objection was raised for the first time in the response brief); *see also Viamedia, Inc. v. Comcast Corp.*, 2022 WL 742448, at *12 (N.D. Ill. Mar. 11, 2022) ("[T]he motion to compel is also granted for the additional reason that [the challenging party] agreed to answer the requests.").

**B.    Plaintiff Should be Compelled to Produce the Documents She Has Agreed to Provide in Response to Polisky's Requests**

Plaintiff should be compelled to produce documents responsive to Polisky's Requests for three reasons: (1) Plaintiff has repeatedly agreed to produce documents responsive to each of the Requests at issue in this Motion, and she has failed to follow-through on that commitment; (2) via her agreement to produce responsive documents, Plaintiff has conceded that the Requests at issue seek relevant material; and (3) production of the requested documents is proportional to the needs of this case.

**1.    Plaintiff Has Repeatedly Agreed to Produce the Documents at Issue.**

As a preliminary matter, Plaintiff has never expressed any intent to withhold the production of responsive documents. In fact, in each of the Parties' meet and confers, Plaintiff's counsel has represented that Plaintiff will produce all documents in her possession, custody, or control that are responsive to the outstanding Requests. As further evidence of this position, Plaintiff's counsel has committed to providing a written statement confirming that Plaintiff is

12

not withholding any responsive, non-privileged documents based on the objections she laid out in her Responses to Polisky's Requests. Plaintiff has thus forfeited any basis for contesting this Motion to Compel.

The problem lies in Plaintiff's inability to execute on her production promises and obligations. Plaintiff has had over seven months to collect responsive materials for production—indeed, those efforts should have begun well before she filed her Complaint nearly three and a half years ago. But Plaintiff has proven that she is unable to produce documents in a timely and complete manner, leaving Polisky unable to adequately defend his case. Polisky, together with his co-defendants, have been forced into the unenviable position of preparing to schedule depositions within an increasingly limited time frame without the benefit of the most basic documents from Plaintiff. Plaintiff's consistently delayed responses, efforts to reschedule meet and confers, and pattern of unfulfilled production promises has shown that she has no intention of respecting the current fact discovery schedule. Given these delays, Court intervention is necessary to force Plaintiff to produce the documents in her possession, as she has repeatedly promised to do.

### 2. Plaintiff Has Conceded Polisky's Requests Seek Relevant Material.

The documents Polisky is seeking are directly relevant to issues that are central to Plaintiff's claims. By way of example, Request No. 2 asks for basic communications that go to the heart of Plaintiff's human trafficking claims—namely, "[a]ll Documents and Communications that refer or relate to Plaintiff's alleged trafficking as a member of the Spirit Squad, including emails, text messages, and other communications." Ex. B, at 3. Over seven months after serving his Requests, Polisky does not even have these most basic documents. In each of the Parties' meet and confers, Plaintiff has agreed to produce documents that are

responsive to each of the Requests at issue in this Motion. At no point has Plaintiff expressed a concern about the relevance of the requested documents during those meet and confers. In fact, Plaintiff's counsel has stated—time and time again—that she is not withholding any responsive documents based on the boilerplate written objections in her responses to Polisky's Requests. To that end, Plaintiff agreed to provide a written statement confirming that she is not withholding any documents based on her objections. Relevance concerns are not the reason for Plaintiff's repeated delays—she is simply dragging her feet.

### 3. Production of the Requested Documents is Proportional to the Needs of This Case.

The proportionality prong generally considers the amount in controversy, the importance of the discovery, and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Barnes-Staples v. Murphy*, 2021 WL 1426875, at *3 (N.D. Ill. Apr. 15, 2021) (quoting Fed. R. Civ. P. 26(b)(1)). Beyond the boiler-plate objections in Plaintiff's written responses to Polisky's Requests (which, again, she has admitted are not the reason for her delay), Plaintiff has never articulated any reason the production of the requested documents would be disproportionate to the needs of this case. Nor would there be a sound basis for that claim—at this point in discovery, Polisky is still waiting to receive the most basic documents from Plaintiff.

The cost of producing hard-copy documents and collecting responsive material from Plaintiff's devices for a proper ESI production is meager when balanced against the potential amount in controversy in damages and attorney's fees that Plaintiff is seeking. And, based on the Parties' discussions, it appears that Plaintiff has already incurred the majority of those costs. In May, Plaintiff reported to the Court that she had engaged a vendor to facilitate the review and production of documents. *See* ECF No. 168. And, weeks ago, counsel told Polisky that this vendor had collected Plaintiff's relevant devices and run the agreed-upon search terms across the same

14

(resulting in over 100,000 hits). The only remaining burden and cost to Plaintiff—*i.e.*, reviewing documents she has already collected for responsiveness and producing the same—pales in comparison to what is at stake in this litigation. Yet, to date, the only ESI Defendants have received has been in the form of screenshots that Plaintiff herself determined are relevant to her case.

## CONCLUSION

For the foregoing reasons, Polisky respectfully requests that the Court grant Polisky's Motion to Compel and order Plaintiff to (1) produce any hard copy documents responsive to Polisky's outstanding Requests, specifically Request Nos. 4–5, 8, 13–15, 17–18, 22, 25, 29–32, 35–41, 43–47, and 49, by July 1, 2024; (2) produce ESI responsive to Polisky's outstanding Requests, specifically Request Nos. 2, 3, 7, 23, 24, 26–28, 33, 34, 42, 48, and 50, in native form with all applicable attachments and families following a comprehensive collection of all relevant sources, application of agreed-upon search terms, and a review for responsiveness conducted by counsel (rather than Plaintiff herself), no later than July 1, 2024; (3) provide a written description of the methods used to collect and produce PLTF000509–001550, including a description of the way in which documents were collected and search terms were applied (if at all) within five days of the Court's order; (4) serve amended responses to Polisky's Requests confirming that all responsive documents have been produced or, alternatively, that there are no documents responsive to a particular Request by July 1, 2024; and (5) re-produce PLTF001587–001682, which contains corrupted text, in a legible form by July 1, 2024. Polisky further requests any additional relief the Court deems appropriate.

Dated: June 19, 2024                    Respectfully submitted,

*/s/ Bethany K. Biesenthal*
Bethany K. Biesenthal
Jordan M. Matthews
Allison McQueen
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile:  +1.312.782.8585
bbiesenthal@jonesday.com
jmatthews@jonesday.com
amcqueen@jonesday.com

*Attorneys for Defendant Michael Polisky*

## <u>CERTIFICATE OF LOCAL RULE 37.2 CONSULTATION</u>

The undersigned certifies that, pursuant to Local Rule 37.2, counsel for Michael Polisky attempted in good faith to confer with counsel for Plaintiff Hayden Richardson. The Parties conferred via video calls on April 2, 2024 at 10:00 A.M. Eastern Time and on May 13, 2024 at 11:00 A.M. Eastern Time regarding Plaintiff's responses and objections to Polisky's Requests for Production and the deficiencies in Plaintiff's productions. During the April 2, 2024 meet and confer, Allison McQueen and Jordan Matthews were present for Polisky and Gabrielle Vinci and Jordan Tuchman were present for Plaintiff. Allison McQueen represented Polisky during the May 13, 2024 meet and confer, and Gabrielle Vinci represented Plaintiff. Despite Polisky's good faith effort, these consultations did not produce a resolution. Polisky has also sent two formal deficiency letters (dated March 7, 2024 and May 3, 2024) and various emails to Plaintiff regarding the outstanding deficiencies (many of which have gone unanswered), and Polisky followed up with a phone call on June 17, 2024. Despite repeated reminders to Plaintiff's counsel of the outstanding deficiencies in her production, Plaintiff has continually failed to follow-through on her agreement to produce amended responses to Polisky's Requests, a complete set of responsive hard-copy documents, and responsive ESI. Polisky has made a good faith attempt to confer and to resolve the differences raised herein, but the Parties are unable to reach an accord.


*/s/ Bethany K. Biesenthal*
Bethany K. Biesenthal

*Attorney for Defendant Michael Polisky*

17

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


*/s/ Bethany K. Biesenthal*
Bethany K. Biesenthal

*Attorney for Defendant Michael Polisky*